**SIGNED THIS: May 17, 2006**

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LONNIE E. MCKINNEY, ) | No. 05-84385 |
| ) | |
| Debtor. ) | |

**O P I N I O N**

This Opinion addresses the devilish issue of whether a real estate tax buyer holds a claim that may be modified in a Chapter 13 plan and the effect of expiration of the redemption period postpetition. The Debtor, Lonnie E. McKinney (DEBTOR), resides at 1231 N.E. Perry, Peoria, Illinois, in a duplex that he owns. A disabled veteran, his only income is $846.00 per month from a Veterans Administration disability pension and $250.00 per month in rent from the second unit in the duplex.

Because the DEBTOR failed to pay the 2001 real estate taxes assessed against the property, the delinquent taxes were sold at the annual tax sale on October 28, 2002. The taxes were purchased by SALTA Group, Inc. (SALTA). The deadline for redemption was established as September 1, 2005.

On August 31, 2005, the DEBTOR filed his Chapter 13 petition and in his Amended Plan proposes to pay SALTA'S claim through the plan from monthly payments of $400.00 to the Chapter 13 Trustee. SALTA objects, alleging that the taxes must be redeemed in full within 60 days of the bankruptcy filing as required by Section 108(b) of the Bankruptcy Code. The DEBTOR did not redeem the taxes within 60 days after filing and SALTA asserts that it should now be permitted to obtain ownership of the property through issuance of a tax deed as provided by Illinois law.

In fact, SALTA went ahead with a state court hearing on September 19, 2005, and obtained an order for issuance of a tax deed and an order for possession. Subsequently, those postpetition orders were declared void by this Court as having been obtained in violation of the automatic stay, and the DEBTOR remains in possession of the property. Because the automatic stay had not been modified, the DEBTOR seeks damages for a wilful violation of the stay.

## ANALYSIS

The issue of whether a Chapter 13 plan may pay a tax buyer's claim over a term that extends beyond the state law redemption period is by no means a novel issue. It was addressed in *Jackson v. Midwest Partnership,* 176 B.R. 156 (N.D.Ill. 1994), where the court held that a tax buyer is not a "creditor" who holds a "claim" since a certificate of purchase does not represent a right to payment. The court further held that the tax buyer's actions in obtaining a tax deed postpetition without first seeking stay relief fell within the exception to the automatic stay for an act to perfect an interest in property under Section 362(b)(3).

The issue was next considered in *In re Blue,* 247 B.R. 748 (Bankr.N.D.Ill. 2000) (Barliant, J.), where the court confirmed a Chapter 13 plan providing for payment in full to a prepetition tax buyer. The trustee sent the funds to the buyer who promptly returned them to the trustee because the funds were received more than 60 days after the redemption period expired. Characterizing the issue as whether the tax buyer was a "creditor" of the debtor, and focusing on the definition of "claim" set forth at Section 101(5), the court determined that the tax buyer was not a creditor since it had no right to compel payment from the debtor, its rights being limited to obtaining a tax deed.[1] The court held that because the tax buyer was not a creditor, it was not bound by the confirmed plan and had the right to refuse the tendered payments. The court also granted relief from the automatic stay so that the tax buyer could proceed in state court to obtain a tax deed, reasoning that the stay only protected the debtor during the period of extended redemption under Section 108(b).

These opinions were then countered by *In re Bates,* 270 B.R. 455 (Bankr.N.D.Ill. 2001) (Wedoff, J.). After determining that the state law redemption period expired before bankruptcy so that there was no claim for real estate taxes that could be treated in a Chapter 13 plan, the court opined that had the petition been filed before the redemption period expired, the tax buyer would have held a "claim" that could have been modified and paid in the plan. The court's analysis is logical and quite thorough and the *Bates* opinion has become the battle flag of debtors who contend that a tax buyer's claim may be modified in Chapter 13.

---

[1] *Blue* was disagreed with in *In re Davenport,* 268 B.R. 159 (Bankr.N.D.Ill. 2001) (Schmetterer, J.), which held that a tax buyer is a creditor subject to the constraints of the automatic stay.

After reviewing the tax sale process under Illinois law, the *Bates* court first considered whether a tax buyer holds a "claim" as defined in the Bankruptcy Code. Noting that a tax buyer has no right to compel the landowner to pay the taxes, only the right to obtain a deed after expiration of the redemption period, the court concluded that the tax buyer has a nonrecourse claim against the property, enforceable in an *in rem* civil action. Nonrecourse, or *in rem,* claims are "claims" under the Bankruptcy Code. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). In addition, because the tax buyer's interest may be satisfied by the payment of money in lieu of the buyer's right to acquire title, it falls within the second part of the definition of "claim" under Section 101(5)(B). *Matter of Udell,* 18 F.3d 403, 408 (7th Cir. 1994).

The *Bates* court next addressed whether the tax buyer's claim may be modified so as to be payable as a secured claim over the term of a Chapter 13 plan, or whether the benefit of bankruptcy is limited to a 60-day extension of the redemption period under Section 108(b). Because a tax buyer has an interest in property of the estate, the claim is a secured claim. The court recognized the fundamental principle of Chapter 13 that secured claims are payable in installments over the term of the plan pursuant to Section 1325(a)(5)(B). Relying on *Moody v. Amoco Oil Co.,* 734 F.2d 1200 (7th Cir. 1984), the *Bates* court reasoned that Section 108(b), which grants a 60-day extension of certain time limits established outside of bankruptcy, should not be interpreted as an implicit negation of the fundamental secured claim treatment rights in Section 1325(a)(5). The court concluded, albeit *in dicta*, that a tax buyer's claim is payable over the term of a Chapter 13 plan as a secured claim under Section 1325(a)(5), which treatment is not defeated by Section 108(b).

4

The issue was next addressed in *In re Murray,* 276 B.R. 869 (Bankr.N.D.Ill 2002)(Squires, J.), where, after the redemption period expired postpetition, the tax buyer moved for relief from the automatic stay in order to obtain a tax deed. The debtor's Chapter 13 plan proposed to pay the claim in full from the proceeds of sale of the property. Rejecting the reasoning of *Bates*, and relying on *Matter of Tynan,* 773 F.2d 177 (7th Cir. 1985), the court held that a Chapter 13 debtor's right to pay a secured claim over the term of the plan is limited by Section 108(b).

Then, in *Smith v. Phoenix Bond & Indem.,* 288 B.R. 793 (N.D.Ill. 2002), the district court agreed with *Murray* that the limited time extension provided by Section 108(b) is the only benefit to be gained in a Chapter 13 bankruptcy case with respect to a tax buyer's claim.

Next, in *In re Commings,* 297 B.R. 701 (Bankr.N.D.Ill. 2003)(Goldgar, J.), the court agreed with *Bates* that a tax buyer is a creditor who holds a secured claim in the bankruptcy case to whom the automatic stay applies. However, the court did not reach the issue of whether the claim may be modified in a Chapter 13 plan, determining, contrary to *Blue*, that the tax buyer was bound by the confirmed plan, which proposed to pay the claim in installments, to which it had failed to object.

Finally, in *S.I. Securities v. Dabal,* 2003 WL 21785625 (N.D.Ill. 2003), reversing the bankruptcy court, the district court, relying on *Tynan,* limited the benefit of bankruptcy to the 60-day extension of Section 108(b).

After careful consideration of the issue in light of these opinions, this Court is of the opinion that the *Bates* reasoning is correct, that a tax buyer is a creditor who holds a claim that may be modified in a Chapter 13 plan, as long as the state law redemption period has

not expired prior to the bankruptcy filing, and that Section 108(b) does not limit a debtor's right to pay the claim over the term of the plan. The cases that hold to the contrary are premised on what this Court perceives to be a misperception that Section 108(b) serves to limit fundamental rights afforded debtors elsewhere in the Code.

An understanding of the rights and powers that a Chapter 13 debtor possesses begins with Sections 541 and 362 and the concept that property of the estate is established as of the petition date and is thereafter protected by the automatic stay. Section 541(a)(1) provides that the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). As stated in *Bates,* the cutoff point where tax sales are concerned, is the redemption deadline.[2] As long as the petition is filed on or before the redemption date, since all legal or equitable interests of the debtor in property pass into the estate, all of the incidents of ownership of the real property become part of the estate, as described more fully below.

Although it is true that the right to redeem the taxes is also a property interest held by the debtor that becomes part of the estate, the right to redeem is an asset separate from the debtor's ownership interest. A tax sale, by itself, conveys no present rights to the buyer and takes no present rights from the homeowner.[3] What a tax buyer acquires is a contingent right to possibly acquire title in the future, which right is not a real property interest. The tax buyer's right is represented by the tax sale certificate, which is personal

---

[2]The DEBTOR filed his petition one day before the redemption period expired. For purposes of deciding this matter, the Court accepts *Bates'* conclusion that the property may be saved in Chapter 13 so long as the petition is filed within the time to redeem. Later in this Opinion, this Court suggests that the proper cutoff point may instead be the issuance of the tax deed.

[3]The principle that the tax sale takes nothing from the homeowner is reinforced by the length of the redemption period - 2 ½ years - for an occupied single family home. 35 ILCS 200/21-350(b).

property in the form of a negotiable instrument. *Matter of Cook County Treasurer,* 185 Ill.App.3d 701, 542 N.E.2d 15 (Ill.App. 1 Dist. 1989). A tax buyer acquires no title in or right to possess the real estate at the tax sale and has no real property interest in the land until the petition for a tax deed has been granted. *Petition of Conrad Gacki Profit Sharing Fund,* 261 Ill.App.3d 982, 634 N.E.2d 1281 (Ill.App. 3 Dist. 1994).

The debtor continues to hold a fee simple ownership interest in the real estate notwithstanding sale of the delinquent taxes. All of the incidents of ownership remain vested in the debtor including title, the right to exclusive possession, the right to income, the right to encumber and the right to sell. The debtor's interest is subject to divestment only upon the occurrence of certain future contingencies including a failure to redeem by the debtor or any lienholder, compliance by the tax buyer with all statutory requirements, and issuance of a tax deed by a court.

It follows that when a bankruptcy petition is filed prior to expiration of the redemption period, what becomes property of the estate is the entire fee interest owned by the debtor to the same extent as if no tax sale had occurred. The event of a prepetition tax sale does not diminish the interest in real property that becomes an asset of the bankruptcy estate pursuant to Section 541(a)(1). In a Chapter 13 case, property of the estate remains such until confirmation, which operates to vest all property of the estate in the debtor, unless the plan or confirmation order provides otherwise. 11 U.S.C. § 1327(b).

Property of the estate is protected by the automatic stay. Section 362(a) provides that a bankruptcy petition operates as a stay of:

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

>     (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
>     (4) any act to create, perfect, or enforce any lien against property of the estate.

As long as property remains property of the estate and the automatic stay remains in effect, the *status quo* is preserved against any involuntary diminution of the estate.

The automatic stay is generally considered not to toll the running of a state law redemption period. *In re Wallace*, 33 B.R. 29, 32 (Bankr.W.D.Mich. 1983). Nevertheless, Sections 362(a)(3) and (4) stay any act to obtain possession of or enforce a lien against the property. It is this injunctive protection that affords a Chapter 13 debtor the opportunity to save the property by confirming and completing a plan of repayment. Tolling is unnecessary. Some courts, however, like the court in *Blue*, have jumped from the "no tolling" principle to the conclusion that when the redemption period expires postpetition the debtor loses his interest in the property, the property passes out of the estate and the automatic stay ceases to protect it. That assumption is contrary to both Illinois law and bankruptcy law.

It is the tax deed alone that conveys title to the property and gives the tax deed grantee the right to possession. 35 ILCS 200/22-40(c). Until the tax deed is issued, title, the right to possession and all other incidents of ownership remain with the debtor. Moreover, unless the tax buyer obtains and records the tax deed within one year after the time for redemption expires, his rights become "absolutely void." 35 ILCS 200/22-85.[4] These provisions refute the notion that the debtor's interest is lost automatically when the

---

[4] The running of the 1-year period is tolled while the automatic stay and plan confirmation order are in effect. 35 ILCS 200/22-85. Even without tolling under state law, the tax buyer's ability to obtain and record the tax deed after termination of the automatic stay would be protected by 11 U.S.C. § 108(c).

8

redemption period expires postpetition. To the contrary, it is undeniable that affirmative action by the tax buyer to obtain a tax deed is a necessary precondition to any divestiture of the debtor's interest.

Thus, the postpetition expiration of the right to redeem does not divest the debtor or the estate of any property interest. Rather, the estate's interest in the real estate remains intact as it existed when the petition was filed. The sole event of divestiture, issuance of a tax deed, is enjoined by the automatic stay. As long as the automatic stay remains in place, the estate's interest in the property is preserved and the debtor's right to reorganize claims secured by the property is unaffected.

As an aside, because the DEBTOR filed his petition before expiration of the state law redemption period, under the *Bates* analysis, the filing was "timely" to permit the property to be saved in Chapter 13. Under *Bates*, if the filing had occurred after the redemption period expired, it would have been too late. Arguably, it is the issuance of the tax deed that is the proper cutoff point, not the end of the redemption period, since the homeowner's property rights are undisturbed until the deed issues. It follows that if bankruptcy is filed after the redemption period expires but before a tax deed issues, the owner's interest becomes property of the estate to the same extent as if the petition was filed during the redemption period, except that the right of redemption itself, a discrete asset, does not enter the estate. This issue remains for another day.

The ability to modify the rights of creditors is the most fundamental and powerful tool that a debtor possesses in each of the three reorganization chapters of the Bankruptcy Code.[5] Section 1322(b)(2) empowers a debtor to modify the rights of holders of both

---

[5] The power to modify is set forth, in identical terms, at Sections 1123(b)(5), 1222(b)(2) and 1322(b)(2).

9

secured and unsecured claims in a Chapter 13 plan.[6]  The limits on the power of modification, with respect to secured claims, are provided in Section 1325(a)(5)'s requirement that unless the creditor agrees otherwise, the plan must pay the value of the claim in full with interest over a term not to exceed five years.  In practice, extending the term for repayment and reducing the monthly payment amount are the most common ways that secured claims are modified.

The Supreme Court has recognized that the "rights" of a creditor that are subject to modification are all of those rights to which the creditor is entitled under state law. *Nobelman v. American Sav. Bank,* 508 U.S. 324, 328-31, 113 S.Ct. 2106, 2109-10, 124 L.Ed.2d 228 (1993).  One of the rights accorded a tax buyer under Illinois law is the right to be paid in full before the redemption period expires.  Under the combination of Sections 1322(b)(2) and 1325(a)(5), it is this Court's view, in agreement with the reasoning in *Bates*, that that right may be modified in a Chapter 13 plan to allow the claim to be paid over the term of the plan.

A number of courts, however, construe Section 108(b) as limiting a debtor's ability to modify a tax buyer's claim in Chapter 13 to nothing more than a 60-day extension of the deadline to pay the claim in full.  In order to understand why that view is erroneous, it is helpful to review how the issue was dealt with under the Bankruptcy Act.  Under the Act, it was accepted that the provision for an extension of time which was the predecessor to Section 108(b) did not undermine a debtor's ability to reorganize.  Section 108(b) was, in

---

[6] The power to modify a secured claim is restricted only where the claim is "secured only by a security interest in real property that is the debtor's principal residence."  11 U.S.C. § 1322(b)(2).  That restriction does not apply to a tax buyer's claim since the tax buyer is secured by statutory rights rather than a security interest, which is defined as a lien created by an agreement.  11 U.S.C. § 101(51).

large part, carried over from Section 11(e) of the Bankruptcy Act, which provided, in material part, as follows:

> Where, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for presenting or filing any claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy, the receiver or trustee of the bankrupt may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement or in the proceeding or by applicable Federal or State law as the case may be.

11 U.S.C. § 29(e).

The language of Section 108(b) is similar, providing:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of–
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

The above-quoted sentence of Section 11(e) of the Act, added in 1938, was intended to allow the trustee or receiver extra time to take any necessary steps to preserve for the estate, rights which might otherwise be lost. 1A COLLIER ON BANKRUPTCY ¶ 11.13(3) (James Wm. Moore, John E. Mulder & Lawrence P. King, 14th ed.). Examples include filing a proof of loss under an insurance policy, *Id.*; filing a proof of claim in an insurance company liquidation proceeding, *Matter of Fidelity General Ins. Co.*, 79 Ill.App.3d 539, 398 N.E.2d 1091

11

(Ill.App. 4 Dist. 1979); and filing a notice of claim on a bond, *Goosen v. Indemnity Ins. Co. of North America,* 234 F.2d 463 (6th Cir. 1956).  In general, Section 11(e) was characterized as extending the time for taking a "procedural step." *Good Hope Refineries, Inc. v. Benavides,* 602 F.2d 998, 1002 n.3 (1st Cir. 1979).

Section 11(e) did not operate to cut off a trustee's or debtor's ability, in a reorganization case, to pay a secured claim in a plan notwithstanding postpetition expiration of a state law redemption period.  In *In re Thomas J. Grosso Inv., Inc.,* 457 F.2d 168 (9th Cir. 1972), a corporate reorganization proceeding pursuant to Chapter X of the Bankruptcy Act, numerous parcels of real estate owned by the debtor had been foreclosed under Arizona law, which provided for a 6-month period following foreclosure sale for the debtor to redeem the property.  Certain mortgagees who had purchased the mortgaged premises at foreclosure sale argued that by operation of the second sentence of Section 11(e), the properties could only be redeemed within the later of the state law redemption period or 60 days after the petition and that the redemption could not be effected with longer term payments in the plan of reorganization. Rejecting this proposed interpretation of Section 11(e) as inconsistent with the purpose of reorganization, the court reasoned as follows:

> In straight bankruptcy, where the ultimate purpose is liquidation of the estate, § 11 provides a beneficial grace period – a grant of extra time within which to take action.  In chapter X, where the purpose is rehabilitation of a going business, a period of grace is not needed. The Act itself provides all the time required. The second sentence of § 11(e), then, when applied to chapter X, converts itself into a drastic limitation upon the power of the court to protect the property of the debtor in the manner contemplated by and for the purposes of the Act.

>Chapter X authorizes the adjustment of "secured debt." As in the *Provident* case, supra, note 5, secured debt may be paid off (even after sheriff's sale) pursuant to a long term reorganization plan, with the ultimate view of reclaiming full right in the collateral. While this would be impossible in straight bankruptcy, where the powers of the court are geared to liquidation, it is indispensable in reorganization.  (Footnotes omitted).

457 F.2d at 173.

The second sentence of Section 11(e) of the Act is the basis for Section 108(b) of the Code, and the same rationale is carried over from the former provision to Section 108(b). 2 COLLIER ON BANKRUPTCY ¶ 108.03 (Alan N. Resnick & Henry J. Sommer, 15th ed.rev.). Examples of its coverage include an extension of time for filing a notice of appeal, *Id.*, and to cure a default on and reinstate an insurance policy, *Id.*, (citing *Counties Contracting and Const. Co. v. Constitution Life Ins. Co.,* 855 F.2d 1054 (3rd Cir. 1988)).  The legislative history to Section 108 contains no indication that Congress intended to change its purpose or operation from prior Section 11(e).

Colliers notes that a split of authority has developed over whether Section 108(b) overrides a debtor's power to modify creditors' rights in a plan where a redemption period is involved, describing the debate as follows:

>The courts have not agreed upon how the provisions of section 108(b) related to other Code sections that give debtors or trustees specific powers, such as the power to cure defaults and the power to assume or reject executory contracts.
>
>Several courts of appeals have held that, when a mortgage foreclosure sale has taken place and the debtor has a statutory time period in which to redeem the property, section 108(b) is the sole section of the Bankruptcy Code governing the debtor's rights in the property, extending the redemption period for a maximum of 60 days.  These courts have held that if the debtor's rights would have become divested by the mere passage of time and no further necessary step in the sale process was automatically

13

> stayed by section 362, then the specific language of section 108(b) left no room for the debtor to extend further the redemption period through a plan curing the mortgage default or otherwise modifying the creditor's rights.
>
> This conclusion, which undermines the effect of other provisions of the Code designed to help debtors save their homes and farms, is far from self evident. While section 108(b) might well govern the right of a trustee to redeem in such a situation, there is no reason to conclude automatically that it overrides other provisions of the Code which allow debtors' plans to cure defaults or modify creditors' rights. Other courts have held that section 108(b) does not eliminate these protections.
>
> Especially when the automatic stay prevents further action required to complete the sale and the debtor's right to redeem extends until that action is taken, section 108(b) should not constitute a bar to the exercise of other powers granted to debtors and trustees in title 11 cases. Even the leading case holding that redemption rights are governed by section 108(b) implied that its result might be different if any additional act were necessary to complete the foreclosure sale. In such cases section 108(c) may be applicable rather than section 108(b), at least if a court action is involved. (Footnotes omitted).

2 COLLIER ON BANKRUPTCY ¶ 108.03[3] (Alan N. Resnick & Henry J. Sommer, 15th ed.rev.). As the Seventh Circuit has recognized, the purpose of Section 108(b) is to provide an extension of time for taking actions necessary to preserve rights, not to restrict a debtor's rights in a reorganization case. *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1215-16 (7th Cir. 1984).

Consistent with the distinction drawn between straight bankruptcy and reorganization cases for purposes of applying Section 11(e) of the Act, Section 108(b) serves a salutary purpose in Chapter 7 cases, but has no role to play in the Chapter 13 process. For a Chapter 7 trustee, who has no power to reorganize or modify claims, the state law right to redeem property from a tax sale is the sole procedure available to save the equity value in such property for the benefit of the estate. The 60-day extension of time provided

by Section 108(b) at least gives the trustee a chance to redeem in order to preserve the estate's interest. A Chapter 7 trustee has no other options.

Not so in Chapter 13 where the debtor has the power to modify claims in a plan. A Chapter 13 debtor doesn't need Section 108(b) because he is not exercising the right to redeem under state law. Instead, the debtor is exercising a right accorded by federal bankruptcy law, which preempts contrary state law. *In re Mann Farms, Inc.,* 917 F.2d 1210, 1212 (9th Cir. 1990) (undoubtedly a bankruptcy reorganization plan can preempt a state law claim); *In re Taddeo,* 685 F.2d 24, 29 (2nd Cir. 1982) (rights accorded under Section 1322(b) not limited by state law). *Cf., United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (creditor's state law right to immediate foreclosure not an interest in property protected by Bankruptcy Code). Therefore, it is incorrect to characterize the issue as involving two conflicting bankruptcy provisions. A tax buyer's claim may be modified in a Chapter 13 plan not because Section 1322(b)(2) "trumps" Section 108(b), but because Section 108(b) is simply not relevant in the context of a plan that modifies the claim. The extension of time granted by Section 108(b) is cumulative of other rights of a Chapter 13 debtor and does not detract from or limit those rights, including the right to modify claims under Section 1322(b)(2).

*Tynan* does not compel a contrary result. The court premised its ruling on the determination that the real property sold at the foreclosure sale never became part of the bankruptcy estate. Rather, it was only the right of redemption that the debtors had after the foreclosure sale that became an asset of the estate. 773 F.2d at 179. Unlike *Tynan,* when the DEBTOR filed his bankruptcy petition, the real estate itself became property of the

15

bankruptcy estate.[7]  As such, the full panoply of property saving rights became available to the DEBTOR including the right to modify and pay secured claims through a plan.

Section 108(b) must be viewed in light of and in comparison with the broad powers to modify claims accorded Chapter 13 debtors as well as the predominant policy of Chapter 13 to afford debtors the opportunity to save their residential real estate.  It is difficult to conceive any reason why Congress would have granted Chapter 13 debtors such broad powers to reorganize home mortgage debts, even after expiration of state law redemption periods, and not have provided similar powers with respect to the secured claims of tax purchasers.  In this Court's opinion, debtors do have such powers and Section 108(b) does not operate to eliminate them.

In summary, a prepetition purchaser of delinquent real estate taxes in Illinois is a creditor who holds a claim secured by the real estate against which the taxes were assessed.  That claim may be modified in a Chapter 13 plan that pays the claim over a term that extends more than 60 days beyond the state law redemption deadline. Section 108(b) does not affect a debtor's power to modify the claim in that manner.

Because of the uncertainty surrounding this issue, this Court believes that relief under Section 362(h) is not appropriate and the DEBTOR'S motion for such relief should be denied.  The Amended Plan treats SALTA'S claim permissibly by classifying it as fully secured and proposing to pay it in full over the term of the plan.  SALTA has not filed a proof of claim, however, having taken the position that it is not a creditor and has no claim.

---

[7]This characteristic of Illinois tax sale law is an important basis for distinguishing cases such as *In re Minter*, 314 B.R. 164 (Bankr.W.D.Tenn. 2004), where the ruling that a Chapter 13 filing does not affect a tax buyer's rights was premised on the peculiarity of Tennessee law that a purchaser at a tax sale acquires "vested title" to the property so that only the right of redemption, and not the property itself, becomes property of the estate.  314 B.R. at 168.

That position having now been rejected, the issue of the proper amount of SALTA'S claim and the interest rate to be paid under Section 1325(a)(5)(B)(ii) must now be addressed and a hearing will be scheduled.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###